UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INTERNATIONAL PERFORMANCE
GROUP, LLC,

    Plaintiff,

v.

BETTER ATM SERVICES, INC.,

    Defendant.
_____/

CASE NO. 1:09-CV-918

HON. ROBERT J. JONKER

## **OPINION AND ORDER**

Before the Court is Defendant Better ATM Services, Inc.'s ("BATM") Motion to Dismiss for Lack of Personal Jurisdiction (docket # 10), filed on October 16, 2009. The motion is ripe for immediate decision because the existing record of the case easily establishes a prima facie basis for personal jurisdiction. BATM's motion under Federal Rule of Civil Procedure 12(b)(2) is denied.

### **FACTS**[1]

International Performance Group, Inc. ("IPG") is a Michigan company with business contacts with credit agencies. BATM, a Delaware company with its primary place of business in Arizona, owns intellectual property that involves selling pre-paid gift cards from automated teller machines.

---

[1] Unless otherwise noted, the facts here are gleaned from the Plaintiff's First Amended Complaint (docket # 7), or its Emergency Motion for Escrow Order. In reciting the "facts," the Court is in no way making any final findings of fact, or precluding any party from contesting any of the facts as alleged by the Plaintiff. On this early challenge to personal jurisdiction, however, the facts as alleged by Plaintiff form the controlling picture for the jurisdictional analysis. Defendant has not yet answered the complaint, and its motion papers do not directly dispute key jurisdictional claims, including without limitation the execution by all parties of the papers that on their face amount to the sale or offer to sell to a Michigan resident securities that would ultimately deliver to a Michigan resident controlling interest in Defendant.

In 2009, IPG and BATM entered a letter of intent and a business licensing agreement under which IPG was to purchase a controlling interest in BATM. IPG was also to secure additional customers for BATM. IPG paid BATM $500,000 under the agreement for the first installment of the transaction. According to IPG, BATM then improperly terminated the agreement and improperly entered an agreement with a customer that IPG had secured for BATM.

In August 2009, BATM signed a Letter of Intent containing a business offer to IPG in Wyoming, Michigan. Under the Letter of Intent, IPG was required to purchase 359,712 shares of the Common Stock of BATM for $500,000 in cash or by wire transfer. That purchase was to be the initial portion of a greater stock purchase that would provide IPG with a controlling interest in BATM for a total purchase price of $3,000,000. The letter additionally set out further stock purchases that might be required and other rights and responsibilities of the parties. Both parties signed the letter. IPG paid the $500,000 to BATM, and BATM accepted the money.

On August 9, 2009, BATM signed a letter addressed to IPG in Wyoming, Michigan, confirming that IPG was in the process of purchasing a controlling interest in BATM and that IPG was authorized to enter business relationships with third parties involving BATM's intellectual property. The letter on its face evinces an intent that IPG be able to use the letter with third parties to establish its interest in BATM and its authority to negotiate business involving BATM. Accordingly, BATM effectively appointed IPG, a Michigan entity, to be its agent.

On August 18, 2009, the parties entered a Licensing and Business Development Agreement Memorandum of Understanding in accordance with the Letter of Intent. That Memorandum memorialized the parties' intent to develop, market and establish pre-paid cards and associated automated teller machine transactions. It set forward the continuing obligations of IPG and BATM

2

with regard to their licensing and business responsibilities and ensured on the face of the document an ongoing relationship between BATM and IPG.

IPG paid to BATM the $500,000 required by the Letter of Intent in exchange for 359,712 shares of BATM's common stock of BATM. IPG alleges that sometime thereafter, BATM unilaterally terminated the agreements. Additionally, IPG alleges that BATM took a customer that IPG had lined up for the business and cut IPG out of the arrangement. As a result of these activities, IPG sued BATM, alleging various claims for breach of contract and tortious interference. BATM moves to dismiss for lack of personal jurisdiction relying principally on a claimed lack of connection to Michigan, but its papers do not come to grips with the jurisdictional implications of the transactional documents themselves.

## ANALYSIS

A federal district court's exercise of personal jurisdiction in a diversity of citizenship case "must be both (1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002). In this case, the Court has neither conducted an evidentiary hearing nor permitted additional discovery on the issue of personal jurisdiction. Indeed, the case is in its very early stages. Accordingly, in reviewing BATM's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) at this time, IPG "need only make a prima facie showing of jurisdiction." *Id.* at 887 (quotation omitted).

**I.     Personal Jurisdiction is Authorized under Michigan's "Long-Arm" Statute.**

Michigan's long-arm statute extends limited jurisdiction over nonresident corporations under Mich. Comp. Laws. 600.715. *See id.* at 888. In Michigan, "[l]imited jurisdiction extends only to

3

claims arising from the defendant's activities that were either within Michigan or had an in-state effect." *Id.* Michigan's statute states:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
>
> (1) The transaction of any business within the state.
>
> (2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.
>
> (3) The ownership, use, or possession of any real or tangible personal property situated within the state.
>
> (4) Contracting to insure any person, property, or risk located within this state at the time of contracting.
>
> (5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

Mich. Comp. Laws 600.715. This statute has been interpreted as extending to the limits of the Fourteenth Amendment. *See Theunissen v. Matthews*, 935 F.2d 1454, 1462 (6th Cir. 1991).

Several sections could potentially apply on the facts recited in IPG's papers, but the most obvious is subsection (1). *See Neogen Corp.*, 282 F.3d at 888. The "transaction of any business" necessary for limited personal jurisdiction under subsection (1) "is established by the slightest act of business in Michigan." *Id.* (internal quotation marks omitted). Here, IPG has presented a prima facie case that BATM transacted business in Michigan when it established mail and telephone contacts with IPG, a Michigan resident; entered an agreement to sell a controlling share of its stock to IPG; sold some shares of its common stock to IPG; and accepted payment from IPG. *See id.* The "arising out of" requirement of section 600.715 also is easily satisfied. *See id.* Here, the alleged

4

economic harm and tortious interference with a business relationship that form the basis of IPG's complaint are directly related to BATM's transaction of business in Michigan with IPG. *See id.* Viewing the allegations in the light most favorable to IPG, the economic harm of which it complains resulted from BATM's conduct of business with Michigan residents over the wires and through the mail. *Id.*

Accordingly, IPG has satisfied its burden of presenting a prima facie case that personal jurisdiction is authorized under Michigan's "long-arm" statute. *See id.*

## II.  Personal Jurisdiction is Authorized under Due Process.

Even though Michigan law authorizes personal jurisdiction over BATM, a federal court cannot exercise its personal jurisdiction in violation of BATM's constitutional right to due process. *See id.* at 889. Due process is satisfied if three criteria are met:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* at 890 (quoting *S. Mach. Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir. 1968)). The minimum-contacts requirement is met here because BATM purposely availed itself of the privilege of conducting activities in Michigan. *See id.* at 889-90.

The first *Mohasco* requirement is met here because BATM responded to business inquiries from a Michigan resident, mailed letters of intent and agreements to a Michigan resident, sold shares of its common stock to a Michigan resident, and accepted payment from a Michigan resident. *See id.* This is "conduct [that] can be properly regarded as a prime generating cause of the effects

5

resulting in Michigan." *See id.* It certainly is conduct more significant than "passive availment of Michigan opportunities." *See id.* Additionally, the business venture in which BATM engaged with IPG contemplated conduct that would involve Michigan year after year. *See id.* Indeed, BATM expected IPG to own a controlling interest in the company. Accordingly, BATM has "shown an intent to maintain continuing relationships and obligations in Michigan." *See id.* (internal quotation marks omitted).

The second *Mohasco* requirement for the exercise of personal jurisdiction also is satisfied in the present case. *See id.* at 892. Here, the cause of action arises from BATM's activities in Michigan because, construing the facts in the light most favorable to IPG, BATM's business with IPG has "caused a variety of economic harms in Michigan." *See id.* This causal connection satisfies the "arising from" requirement of *Mohasco*. *Id.*

Finally, IPG has alleged sufficient facts to present a prima facie case regarding the third *Mohasco* requirement. *See id.* BATM's acts and the consequences caused by them "have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *See id.* BATM's agreement contemplated ownership by a Michigan entity. It negotiated transactions with a Michigan resident, entered agreements with a Michigan resident, sold its common stock to a Michigan resident, and accepted payment from a Michigan resident as part of a larger agreement to transfer ownership to the Michigan resident. *See id.* BATM's contact with IPG through the mail and wires is significant because it constitutes the doing of business in Michigan, not simply exchanging information. *See id.* Its relationship with IPG involves continuing obligations and represents a continuing relationship with Michigan. *See id.*

Accordingly, IPG has easily satisfied its burden of presenting a prima facie case that personal jurisdiction is authorized under due process. *See id.* at 893.

**ACCORDINGLY, IT IS ORDERED** that BATM's motion for dismissal for lack of personal jurisdiction (docket # 10) is **DENIED**. Of course, nothing precludes BATM from preserving a personal jurisdiction defense in its answer to IPG's First Amended Complaint and presenting in a later motion any well founded jurisdictional defense.


Dated:   October 22, 2009            /s/ Robert J. Jonker
                                     ROBERT J. JONKER
                                     UNITED STATES DISTRICT JUDGE